**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| DULSA D.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25-cv-2020-LTS<br><br>**REPORT AND RECOMMENDATION** |

---

Dulsa D. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## *I. BACKGROUND*

Claimant was born in 1969. (AR[1] at 254.) She is a high school graduate from Unk, Bosnia-Herzegovina. (*Id*. at 259.) Claimant allegedly became disabled due to stage II breast cancer, weakness in legs and knees, right arm and shoulder nerve damage, and depression. (*Id*. at 258.) Claimant's amended onset of disability date is May 22, 2021. (*Id*. at 17, 200.) On December 16, 2021, Claimant protectively filed his application for DIB. (*Id*. at 17, 224.) Her claim was denied originally on June 30, 2022 (*id*. at 113-121), and was denied on reconsideration on December 15, 2022. (*Id*. at 122-131.) A

[1] "AR" cites refer to pages in the Administrative Record.

hearing was held on January 3, 2024, with Claimant and her attorney David Porter appearing by telephone before Administrative Law Judge ("ALJ") Henry Hamilton. (*Id.* at 54-85.) Vocational Expert ("VE") Carma Mitchell also appeared at the hearing telephonically. (*Id.*) The hearing was also aided by a Bosnian interpreter. (*Id.*) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on February 28, 2024. (*Id.* at 17-32.)

Claimant requested review and the Appeals Council denied review on March 6, 2025. (*Id.* at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On May 2, 2025, Claimant timely filed her Complaint in this Court. (Doc. 1.) On September 8, 2025, all briefing was completed, and the Honorable Leonard T. Strand, United States District Court Judge, referred the case to me for a Report and Recommendation.

## *II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

> supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

***A. The ALJ's Findings***

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through March 31, 2025. (AR at 20.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from her amended alleged onset date of May 22, 2021. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: breast cancer and degenerative joint disease of the shoulders and knees. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 22.) The ALJ evaluated Claimant's claims under listing 12.04 (depressive disorders), 12.06 (anxiety disorders), and 13.10 (breast cancer). (*Id.*) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) such that she can lift and carry twenty pounds occasionally, ten pounds frequently; sit for six hours; stand and/or walk for six hours; frequently reach overhead and in all directions bilaterally; frequently finger and handle bilaterally; frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, or crouch; never work at unprotected heights; occasionally work around moving mechanical parts; and occasionally work with vibrations.

(*Id.* at 22-23.) Also at the fourth step, the ALJ determined that Claimant was capable of performing her past work as a hand presser. (*Id.* at 31.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 32.)

### *B. The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be

drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## *III. DISCUSSION*

### *A. Parties' Arguments*

Claimant argues that the ALJ failed to "consider all of the Claimant's impairments in combination." (Doc. 7 at 15.) Specifically, Claimant argues that "[w]hile the ALJ acknowledged that she has severe impairments, [the ALJ] disregarded [her] allegations of her limitations from the onset of depression and anxiety which she has experienced since the initial diagnosis of breast cancer." (*Id.*) Claimant asserts that the ALJ improperly disregarded and failed to discuss her diagnosed osteoporosis, chemotherapy-induced anemia, and insomnia when determining her RFC. (*Id.* at 16.) Claimant also argues that the ALJ failed to properly assess her RFC. (*Id.* at 17.) For example, Claimant asserts that the ALJ failed to properly consider the opinions of Dr. Courtney Stufflebeam, a consultative psychologist. (*Id.* at 18-19.) Further, Claimant argues that the ALJ failed to "fully and fairly develop the medical record." (*Id.* at 19.) Claimant maintains that "[b]ased upon the corroborative medical evidence of record, if the ALJ had any doubts regarding [Claimant's] condition, he could have ordered additional consultative examinations to further evaluate [Claimant's] osteoporosis, anemia, fatigue, range of motion, depression, anxiety, and the resulting effects on her ability to function in the workplace on a regular and sustained basis." (*Id.* at 20.)

The Commissioner argues that the ALJ "properly considered Plaintiff's impairments in combination." (Doc. 9 at 6.) Specifically, the Commissioner argues that:

> The ALJ's decision shows that he considered the combined effects of Plaintiff's impairments (Tr. 19-13). The ALJ clearly stated that he considered Plaintiff's combined impairments at step two and three and in assessing Plaintiff's RFC (Tr . 19-22). Specifically, he recognized that his sequential analysis had to include consideration of Plaintiff's impairments or combination of impairments (Tr. 19), and he noted that, in determining Plaintiff's RFC, he "must consider all of the claimant's impairments, including impairments that are not severe" (Tr. 20). Further, the ALJ stated that, in reaching his RFC finding, he considered "the entire record" and "the record as [a] whole" (Tr. 22) and evaluated "all symptoms"(Tr. 23). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments.

(*Id.* at 6-7.) The Commissioner also argues that "substantial evidence supports the ALJ's physical RFC finding." (*Id.* at 7.) The Commissioner asserts that the ALJ properly considered Dr. Stufflebeam's opinions. (*Id.* at 9-11.) Further, the Commissioner maintains that the ALJ "fully and fairly developed the record." (*Id.* at 11.) The Commissioner argues that the record "was reasonably complete and contained sufficient evidence from which the ALJ could make an informed decision" and therefore, "the ALJ was not required to obtain further evidence." (*Id.* at 12.)

### *B. Pertinent Medical Evidence*

On May 18, 2022, Dr. Stufflebeam performed a psychological evaluation on Claimant. (AR at 716-18.) Dr. Stufflebeam noted that Claimant was accompanied by her friend and interpreter and Claimant presented as "euthymic, but slightly anxious" with congruent affect and motor activity that was "incredibly slow and intentional." (AR at 716.) Claimant's chief complaint was outlined as follows:

> [Claimant] reported that she was diagnosed with breast cancer a few years back and has been dealing with the side effects of that since treatment. She

> said she is not doing good emotionally and struggles with depression. Per paperwork provided for the purposes of this examination, the following were reported: "Stage II Breast Cancer; Weakness in legs and knees; Right arm and shoulder nerve damage; Depression."

(*Id.*) Claimant reported that she "worked in hotel housekeeping for over 11 years but needed to stop after her cancer diagnosis" and "[d]ue to pain, energy level and limited physical abilities, she is unable to work as she did previously." (*Id.* at 717.) Claimant described her current cognitive and emotional functioning as follows:

> [Claimant] struggles with her emotional state on a daily basis. She often sits in the silence at home, staring off into space. She is often irritable, has a very low mood, low motivation and has significant sleep issues. She also spoke of being unable to shut her brain off, often worrying about various things. She was unable to specify where her overall anxiety comes from, she just worries. [Claimant] indicated this is very unlike her. She was a happy, cheery person before, she was a hard worker, enjoyed life and liked being busy. She noted everything changed after her cancer diagnosis and treatment.

(*Id.*) Dr. Stufflebeam noted that she "attempted to obtain some information about [Claimant's] overall cognitive functioning" but it was "difficult due to language barriers and cultural differences." (*Id.*) Claimant described her activities of daily living:

> [Claimant] will get up around 6:30AM and attempt to start things for the day. She has coffee with her husband before he goes to work. After, she will take care of their dogs and sit outside when it's nice out. It takes her a long time to do basic things due to pain and issues with her right side. She spoke again about how hard it is to live like this, due to always being busy in the past and not being physically able to do as much anymore.

(*Id.*) Dr. Stufflebeam diagnosed Claimant with generalized anxiety disorder and major depressive disorder. (*Id.* at 718.) Dr. Stufflebeam opined that Claimant's prognosis was guarded to poor, noting that Claimant "has significant physical issues that limit her ability to work due to pain and overall functioning." (*Id.*) Dr. Stufflebeam also noted that

Claimant's depression "exacerbates her low energy." (*Id.*) Dr. Stufflebeam opined that Claimant would have moderate deficits with the ability to understand instruction, procedures, and locations, noting that "[d]ue to a language barrier, it may be difficult for her to fully understand and translate things, especially if it is about a topic she is unfamiliar with." (*Id.*) Dr. Stufflebeam also opined that Claimant would have significant deficits with the ability to carry out instructions and maintain concentration and pace because Claimant "will need frequent breaks and accommodations to help manage her pain" and it "will take longer for her to complete things due to her inability to engage physically with tasks, especially with her right side." (*Id.*) Dr. Stufflebeam found: (1) no deficits with the ability to interact appropriately with supervisors, co-workers, or the public; (2) no deficits with the ability to use good judgment and respond appropriately to changes in the workplace; and (3) no deficits with the ability to handle funds. (*Id.*)

### *C. Relevant Law*

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

Under the rules articulated in 20 C.F.R. Section 404.1520c, when determining the persuasiveness of a medical opinion, no such opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Additionally, when assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration,

> frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322; *see also* SSR 16-3P (S.S.A.), 2017 WL 5180304, at *7-8 (outlining factors nearly identical to the factors found in *Polaski* for evaluating the intensity, persistence, and limiting effects of an individual's symptoms). An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

***D. Analysis***

In his decision, the ALJ thoroughly addressed Claimant's depression and anxiety and explained his reasoning for finding these impairment nonsevere:

[T]he claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. The claimant reported that she did not need any reminders to take care of her personal needs / grooming or reminders to take medication. (Exhibits B5E, B12E). Mental status examination (MSE) found the claimant's memory was consistently found to be grossly intact. (Exhibit B23F). Notably, at the psychological consultative evaluation (CE), it was opined that due to a language barrier, it might be difficult for the claimant to fully understand and translate things, especially if it was about a topic she was unfamiliar with. (Exhibit B7F). However, SSR 20-01p indicates neither the country in which an individual was educated nor the language an individual speaks informs us about whether the individual's reasoning, arithmetic, and language abilities are commensurate with his or her formal education level. In addition, we will not consider whether the individual lacks English language proficiency when determining the claimant's education category. At the CE, the claimant stated that she graduated high school in Bosnia and enjoyed coursework. The claimant also reported that she had worked in hotel housekeeping for over 11 years. As such, in regard to an opinion regarding any potential difficulties related to language barrier, those opinions are not persuasive as they are not consistent with the claimant's education category and successful work history.

The next functional area is interacting with others. In this area, the claimant has no limitation. The claimant reported that that she had problems getting along with other because she stopped hanging out with them. (Exhibits B5E, B12E). However, the record revealed the claimant was described as lovely and cooperative. She was also noted to be engaged, relaxed, and calm. (Exhibits B21F-B23F). Psychological CE indicated no deficits in this area were noted. (Exhibit B7F).

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant initially reported that pain did not affect her ability to think or concentrate. (Exhibit B4E). She also did not check the box indicating that her condition affected concentration. (Exhibit B5E). Although she subsequently reported that pain did affect her ability to think or concentrate and she checked the box indicating her condition affected concentration. (Exhibits B9E, B12E). At the psychological CE, the examiner opined that due to pain, the claimant had significant deficits in the ability to carry out instructions or maintain concentration and pace. (Exhibit B7F). The undersigned notes that such an opinion is outside the scope of expertise for a psychologist and as such, that opinion is not persuasive. In contrast, when asked if she had trouble concentrating on things like reading or watching television, the claimant responded, "not at all." (Exhibit B23F).

The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. The claimant indicated some issues with her personal care. (Exhibits B5E, B12E). MSEs found the claimant's appearance as well as her insight / judgment were appropriate. (Exhibit B23F). At the psychological CE, it was noted that no deficits were noted as far as ability to use good judgment and respond appropriately to changes in the workplace. (Exhibit B7F).

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

(AR at 21-22.)

The ALJ also thoroughly addressed Claimant's medical history:

Following the thorough examinations of the evidence by the state agency consultants, the record of evidence revealed the claimant continued to receive treatment for her medically determinable impairments. Records revealed the claimant was seen for gynecological treatment, to include hysteroscopy and mammogram. (Exhibits B20F, B21F). Pre-operative examination for the hysteroscopy found the claimant to deny chest pain and reported that depression was in full remission on citalopram. Trazodone

helped well with insomnia. Exam found the claimant's gait and station were normal. Upper and lower extremity bilaterally revealed normal range of motion and strength with no joint enlargement or tenderness. She was oriented to time, place, and person. There was no depression, anxiety, or agitation. Judgment and insight were intact. (Exhibit B23F, pp. 107-110).

At follow-up visit for breast cancer, the claimant's history and examination was benign, showing no evidence of recurrent disease. She was tolerating tamoxifen very well without any side effects. However, the claimant did report significant pain and tightness in her right axilla with pain. The claimant was referred for PT. Notably, the therapist called the provider, stating she had seen the claimant for the same issue four times since 2020. The therapist felt that the claimant did not consistently do her stretching exercises at home and had the mindset that she was still sick and would never get better. Referral was changed to OT rather than PT. (Exhibit B24F). The claimant was seen for OT. The claimant reported pain in the right lateral chest. She stated that when using her hand for work, her pain was worse. OT noted it was a chronic complaint for the claimant and she had been seen for five different episodes since the initial onset of cancer diagnosis. OT noted the claimant had difficulty describing her symptoms. The claimant was tolerating increased active range of motion and OT wanted her to participate in upper extremity and total body conditioning / strengthening to improve activity tolerance. The claimant voiced that she did not feel ready for that but was unable to give a legitimate reason why. As such, one more session was planned and they she would likely be discharged to home exercises. (Exhibit B21F). When asked by her provider about OT, she indicated she was going to therapy twice a week, which had been helpful. She stated that stretching did help relieve the pain. (Exhibit B22F).

The claimant presented for a wellness examination in October 2023. Depression screen was negative. Exam found the claimant was not in acute distress. She was of normal appearance and normal weight. She had normal range of motion with no weakness and her gait was normal. Mood, behavior, thought content, and judgment were normal. (Exhibit B23F, pp. 84-88).

In late November 2023, the claimant stated that she continued to do her stretching exercises every day. She reported taking tamoxifen as

prescribed, noting some hot flashes and joint aches with that medication. As for her mental health, the claimant reported that the medication she was taking for depression / anxiety was helping with her overall mood. In addition, she was maintaining activities of daily living without any assistance. The provider informed the claimant that she had seen significant improvement in relation to depression. (Exhibit 24F). Therapy records shortly thereafter revealed the claimant to report that she really did not feel terrible. She talked of looking forward to going out of town to Detroit to a wedding with her husband. (Exhibit B23F, p. 9).

(*Id.* at 29-31.)

The ALJ addressed Dr. Stufflebeam's opinions:

Following interview and MSE, Dr. Stufflebeam diagnosed the claimant with generalized anxiety disorder and major depressive disorder, mild, single episode. Dr. Stufflebeam indicated the claimant's prognosis was guarded to poor. Dr. Stufflebeam noted that the claimant had significant physical issues that limited her ability to work due to pain and overall functioning. Additionally, depression exacerbated her low energy. Dr. Stufflebeam provided the following opinions: as far as ability to understand instruction, procedures, and locations – moderate deficits noted. Due to a language barrier, it might be difficult for her to fully understand and translate things, especially if it was about a topic she was unfamiliar with. As far as ability to carry out instructions, maintain concentration and pace – significant deficits noted. The claimant would need frequent breaks and accommodations to help manage her pain. It would take longer for her to complete things due to her inability to engage physically with tasks, especially with her right side. As far as ability to interact appropriately with supervisors, co-workers, and the public – no deficits noted; however, with language barriers it might make it difficult. As far as ability to use good judgment and respond appropriately to changes in the workplace – no deficits noted. And as far as ability to handle funds – no deficits noted. (Exhibit B7F). As discussed above, the opinions provided in regard to language barriers or the claimant's physical health are not persuasive. The remaining findings and opinions are generally consistent with the overall record of evidence and are mostly persuasive.

(*Id.* at 24.) In determining that Claimant's depression and anxiety were nonsevere impairments, as discussed above, the ALJ noted that as to the language barrier issue raised by Dr. Stufflebeam, such opinion was unpersuasive:

> SSR 20-01p indicates neither the country in which an individual was educated nor the language an individual speaks informs us about whether the individual's reasoning, arithmetic, and language abilities are commensurate with his or her formal education level. In addition, we will not consider whether the individual lacks English language proficiency when determining the claimant's education category. At the CE, the claimant stated that she graduated high school in Bosnia and enjoyed coursework. The claimant also reported that she had worked in hotel housekeeping for over 11 years. As such, in regard to an opinion regarding any potential difficulties related to language barrier, those opinions are not persuasive as they are not consistent with the claimant's education category and successful work history.

(*Id.* at 21.) *See Rotshteyn v. Massanari*, 158 F.Supp.2d 525, 537 (E.D. Pa. 2001) (upholding an ALJ's rejection of a doctor's findings because the claimant's limitations were attributed "as much to cultural adjustment difficulties and the language barrier as" to Claimant's "mental impairment").

Similarly, as to Dr. Stufflebeam's opinions regarding Claimant's physical health, and as discussed above, the ALJ stated:

> At the psychological CE, the examiner opined that due to pain, the claimant had significant deficits in the ability to carry out instructions or maintain concentration and pace. (Exhibit B7F). The undersigned notes that such an opinion is outside the scope of expertise for a psychologist and as such, that opinion is not persuasive. In contrast, when asked if she had trouble concentrating on things like reading or watching television, the claimant responded, "not at all." (Exhibit B23F).

(*Id.* at 21-22.) An ALJ may properly discount a consultative psychologist's opinion "because it was based partly on consideration physical impairments, an area outside [the

psychologist's] expertise." *Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003); *see also Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (same).

The ALJ also addressed the opinions of Dr. Mark Becker, Ph.D., who reviewed Claimant's medical history on behalf of Disability Determination Services and found Claimant had "no limitation with respect to understanding, remembering, or applying information; no limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself." (*Id.* at 24.) The ALJ also noted that Dr. Becker reviewed Dr. Stufflebeam's opinions and like the ALJ found that:

> However, Dr. Becker noted that Dr. Stufflebeam provided opinions in regard to difficulties the claimant might experience due to a language barrier, but language barrier was not considered to be a mental impairment and had not precluded successful work in the past. Dr. Stufflebeam also provided an opinion as to difficulty with concentration, persistence, or pace due to physical health issues, but those were not appropriately assessed at the mental CE. Thus, those opined limitations were not considered.

(*Id.* at 25.) The ALJ's conclusion regarding Dr. Becker's opinions was as follows:

> Dr. Becker indicated the claimant's mental impairments were Major Depressive Disorder, Mild and Generalized Anxiety Disorder. Listings 12.04 and 12.06 were used in evaluating the claim. The claimant's allegations of impairment due to mental impairments were consistent; however, the claimant reported a wide range of multistep activities of daily living performed on a daily basis despite those mental impairments. In addition, difficulties with activities of daily living were attributed to physical allegations. Dr. Becker found that the claimant's mental medically determinable impairments did not meet or equal listing criteria. The medical record indicated euthymic mood and no current active mental diagnosis. The mental CE noted impairment due to language barrier and physical issues, but none due to mental or cognitive issues. Dr. Becker stated that the preponderance of the evidence indicated the claimant's mental impairments would impose no more than mild impairment and as such were deemed to be non-severe. (Exhibit B4A; see also Exhibits B3E-B5E, B1F-B8F). The undersigned finds Dr. Becker's prior administrative

> medical findings to be persuasive as he was able to review the available records and provided analysis based on his expertise as a psychologist as well as his familiarity with the agency rules and regulations. Moreover, as discussed above in Finding # 3, his findings are consistent with the record of evidence.

(*Id.* at 25-26.)

The ALJ also addressed the opinions of Dr. Tiffany Iskander, Ph.D., who reviewed Claimant's mental health records on reconsideration of the initial denial of DIB. (AR at 27-28.) The ALJ found that:

> In December 2022, on behalf of Disability Determination Services, Tiffany Iskander, Ph.D., reviewed the claimant's medical history for the relevant period and opined the claimant had no limitation with respect to understanding, remembering, or applying information; no limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. Dr. Iskander noted that upon request for reconsideration, the claimant alleged new physical conditions, claustrophobia, and lack of interest. Updated medical evidence from Peoples Community Health noted the claimant had continued to obtain treatment for mostly physical ailments, and presented as largely within normal limits. In September 2022, she noted her anxiety symptoms were "stable" and she was fully oriented with no depression, anxiety, or agitation. Her judgment was intact. In November 2022, the claimant presented for a mental health follow up. She noted continued difficulty sleeping. Ongoing racing thoughts were also noted without any new stressors. She stated she was medication compliant with no new changes in symptoms. She reported worrying "a lot" with racing thoughts and restlessness, but denied irritability or panic attacks. She reported some poor concentration with low energy but denied memory impairment, or helplessness. She presented with adequate hygiene, appropriate behavior and attitude, euthymic mood, and congruent and euthymic affect. She was alert with good insight and judgment. An eight week follow up was scheduled.
>
> Dr. Iskander found that updated Function Reports indicated the claimant continued to attribute most of her problems to physical ailments and she denied mental health barriers to engaging in personal care. She could

> complete simple meals and engaged in some household chores. She could drive and navigate the community independently. She could shop in stores and manage money. Socially, she stopped hanging out with a lot of people but got along with authority figures and had never been fired due to interpersonal issues. She did not endorse problems with memory, attention, or concentration and noted that she could follow written instructions. She indicated she did not handle stress or changes in routine well.
>
> Dr. Iskander stated that after reviewing the available records, she concluded the claimant's functioning remained consistent with the functioning noted at the time of the initial determination. Evidence in the file showed that the claimant's limitations were consistent with those found at the initial level and therefore continued to be nonsevere. (Exhibit B6A; *see also* Exhibits B9E, B12E, B9F-B19F). The undersigned finds Dr. Iskander's prior administrative medical findings to be persuasive as she was able to review the available records and provided analysis based on her expertise as a psychologist as well as her familiarity with the agency rules and regulations. Moreover, as discussed above in Finding # 3, her findings are consistent with the record of evidence.

(*Id.*)

Based on the foregoing, I find that the ALJ both properly considered Dr. Stufflebeam's opinions and properly addressed the consistency and supportability of Dr. Stufflebeam's opinions. The ALJ also properly supported her conclusions that Dr. Stufflebeam's opinions were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr. Stufflebeam's opinions.

Turning to the ALJ's credibility determination, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be

> expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. . . .
>
> Although the claimant described disabling symptoms as a result of the medical impairments, the record is not consistent with that conclusion. The claimant described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant was able to prepare meals and perform household chores. She was able to drive a car and shop in stores for food. The claimant was able to manage finances and socialize over the phone. (Exhibit B5E). She subsequently stated that she did not prepare meals, she did not shop, and she did not handle finances. (Exhibit B12E). However, such a decline is not supported by the record. Rather, the record documented an improvement in the claimant's symptoms. For example, the claimant reported traveling to Detroit. (Exhibit B23F, p. 9). She was crocheting. She was getting out and walking more to manage her stress and anxiety. (Exhibit B23F, p. 18). When asked by her provider about OT, she indicated she was going to therapy twice a week, which had been helpful. She stated that stretching did help relieve the pain. (Exhibit B22F). The claimant reported that the medication she was taking for depression / anxiety was helping with her overall mood. In addition, she was maintaining activities of daily living without any assistance. (Exhibit 24F). In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's subjective allegations. The claimant did experience some level of limitations, but only to the extent described in the residual functional capacity.

(AR at 30-31.)

Based on the foregoing, it is clear from the ALJ's decision that he considered and addressed the *Polaski* factors in determining that Claimant's subjective allegations of disability and the testimony of her witnesses were not fully credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors

before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Claimant's subjective complaints, I find that the ALJ's credibility determination should not be disturbed. *See Johnson*, 240 F.3d at 1148.

In determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for her complaints. (AR at 21-31.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making his overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 30.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618; *see also Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (alteration in original) (citation omitted)."). Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803.

Finally, in her brief, Claimant asserts that "[e]ven the vocational expert who testified at the hearing stated that [Claimant's] past relevant work as a hand packager

would be precluded because of the more than occasional reaching, handling, and fingering required in that job. (T. 78,79). Despite this testimony, the ALJ concluded that [Claimant] could still perform this job. Neither the medical evidence of record, nor the vocational expert testimony, supports this conclusion." (Doc. 7 at 19.) While it is true that the VE testified that Claimant's past work as a hand packager would be precluded, the VE also testified that Claimant could perform her past work as hand presser (hand ironer), which is the job the ALJ cited at steps four and five. Contrary to Claimant's argument, like the VE, the ALJ did not rely on Claimant's past work as a hand packager. *See* AR at 31-32, 78-79. Thus, I find Claimant's argument on this issue lacks merit.

Accordingly, based on the foregoing, I recommend that the District Court affirm the ALJ's decision.

## *IV. CONCLUSION*

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 21st day of September, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa